IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN PORTERFIELD and ANITA PORTERFIELD, <br> Plaintiffs, <br><br> vs. <br><br> JP MORGAN CHASE, N.A. and DEUTSCHE BANK, NATIONAL TRUST COMPANY <br><br> Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 12-cv-00815-OLG |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ORLANDO L. GARCIA:

NOW COME John Porterfield and Anita Porterfield, Plaintiffs herein, and file this Plaintiffs' First Amended Complaint against JP Morgan Chase, N.A. and Deutsche Bank, National Trust Company, Defendants herein, and in support thereof, show the court the following:

### PARTIES AND SERVICE

1. Plaintiffs are individuals residing in Bexar County, Texas.

2. Defendant, Deutsche Bank, National Trust Company (hereinafter, "DBNTC"), is a National Bank organized under the provisions of Title 12, United States Code and doing business in the State of Texas. It has been properly served with process and has invoked the jurisdiction of this Court by filing a Notice of Removal. Service of this amended complaint will be made in accordance with F.R.C.P. 5.

3. Defendant. JP Morgan Chase, N.A. (hereinafter, "Chase"), is a National

Bank organized under the provisions of Title 12, United States Code and doing business in the State of Texas. It has been properly served with process and has invoked the jurisdiction of this Court by filing a Notice of Removal.   Service of this amended complaint will be made in accordance with F.R.C.P. 5.

## JURISDICTION AND VENUE

4.     The subject matter in controversy is within the jurisdictional limits of this court pursuant to 28 U.S.C. §1332.

5.     This court has jurisdiction over Defendant DBNTC, because said Defendant is a foreign entity that does business in Kendall County, Texas and has established both specific and general minimum contacts in the State of Texas so as to make it amenable to personal jurisdiction herein.  This court has jurisdiction over Defendant Chase, because said Defendant is a foreign entity that does business in Kendall County, Texas and has established both specific and general minimum contacts in the State of Texas so as to make it amenable to personal jurisdiction herein.

6.     Venue in the San Antonio Division of the Western District of Texas is proper in this cause under 28 U.S.C. 1391(a)(2), because this action involves real property and this district is where all or part of the real property is located.

## FACTS

7.     Plaintiffs became owners of 2 Walnut Grove, Boerne, Texas 78006 located in Kendall County, Texas ("the property") by virtue of a Judgment rendered by the Kendall County District Court on April 19, 2007.  This Judgment was in favor of Plaintiffs and against the prior owner of the property, Jon Galland.

8. Defendant DBNTC held a purchase money lien on the property that arose out of the purchase of the property by Jon Galland. Lawyers Title Insurance Corporation (subsequently acquired by Fidelity National Title Insurance Company) was the title insurance company for the transaction between Galland and DBNTC's predecessor in interest, Long Beach Mortgage Company.

9. Plaintiffs attempted to pay off the DBNTC lien, but were wrongfully prevented from doing so which gave rise to litigation between the Plaintiffs and DBNTC in Cause No. 07-445 filed in the 216th Judicial District Court of Kendall County, Texas ("the initial Kendall County District Court litigation"). Chase is and was the servicer of the DBNTC loan and acted as its agent at all times relevant to this complaint.

10. It was discovered that the property was encumbered by two significant judgment liens in favor of Warren Power & Machinery, L.P. and Frost National Bank of San Antonio. These liens had not been excepted from coverage by Lawyer's Title Insurance Corporation in connection with its title policy covering the transaction between Galland and DBNTC's predecessor in interest, Long Beach Mortgage Company.

11. On September 15, 2011 the parties entered into a Mediated Settlement Agreement ("MSA") regarding the initial Kendall County District Court litigation. A true and correct copy of the MSA is attached hereto as Exhibit 1 and incorporated herein by reference. At the mediation, the parties discussed the existence two prior judgment liens and all parties stated their mutual understanding that releases of the two prior judgment liens had been obtained by Fidelity National Title Insurance Company pursuant to its predecessor's title insurance policy covering the Galland transaction.

12.     At the mediation, Defendant Chase's attorney Wm. Lance Lewis stated that Chase would ensure that the releases of the judgment liens were filed by Fidelity National Title Insurance Company as Chase had a long working relationship with Fidelity National Title Insurance Company.  Although Chase did not sign the MSA, it participated in the mediation as the agent of DBNTC and seeks to assert rights pursuant to that agreement and thus is bound by the MSA signed by its principal.

13.     Defendants failed to timely provide a payoff statement to Plaintiffs as required by the MSA, and failed to ensure that the releases of the judgment liens were filed by Fidelity National Title Insurance Company.  These actions inhibited Plaintiffs' ability to obtain financing and tender the $120,000 required by the MSA.

14.     The December 31, 2011 deadline for Plaintiffs to tender the $120,000 passed, but the parties continued to confer on obtaining and filing releases of the judgment liens.  In the spring of 2012, Defendant DBNTC's attorney Darrell Smith represented to Plaintiffs that he was working to remove the liens and that the property was not subject to foreclosure while he was obtaining and filing the judgment lien releases.

15.     On or about May 29, 2012, a judgment of dismissal of the initial Kendall County District Court lawsuit was signed by the presiding judge.  In their Motion to Dismiss, Defendants stated that "all terms and conditions of the Mediated Settlement Agreement had been met" when such was clearly not the case as Defendants DBNTC and its agent Chase had failed to provide Plaintiffs a usable payoff statement and clear the judgment liens as had been agreed in the MSA and understood by the parties at the time of the mediation.

16. On August 7, 2012, the Defendants purported to foreclose on the property. On information and belief, the deed of trust on which Defendants asserted their right to foreclose was void pursuant to § 16.035 of the Texas Civil Practice and Remedies Code because more than four years, plus any periods of time during which the statute of limitations was tolled, had passed since the date the mortgage in question was accelerated.

17. Defendants gave no notice of the purported foreclosure to any interested party, including Plaintiffs and the two judgment lien holders. Plaintiffs were entitled to such notice as they had a contractual interest in the deed of trust and were in privity with Defendants pursuant to the MSA.

18. Defendants have now begun efforts to dispossess Plaintiffs of the property and interfere with their use thereof.

## CAUSES OF ACTION

19. The above-described acts of Defendants DBNTC and Chase constitute breach of contract, wrongful foreclosure, unreasonable debt collection and negligent misrepresentation as well as violations of the Texas Debt Collection Practices Act as it is tied in to Texas Deceptive Trade Practices Act. Plaintiffs reasonably relied on Defendants' misrepresentations to their detriment. Misrepresentations made by agents or employees of Defendants are imputed to Defendants pursuant to the doctrine of respondeat superior and the law of agency.

20. Additionally and/or in the alternative, Defendants should be estopped from seeking possession of the property pursuant to the doctrine of promissory estoppel. Defendant DBNTC's attorney promised Plaintiffs that the property would not be

foreclosed upon while releases of the judgment liens were being obtained, and Plaintiffs reasonably and foreseeably relied on this promise by failing to take other actions to protect their interest in the property such as by seeking to rescind the MSA and proceed with litigation.  An injustice can only be avoided by enforcing this promise, as Plaintiffs were misled into allowing a foreclosure sale to go forward by Defendant DBNTC's attorney's false assurances.

21. Additionally and or in the alternative, Plaintiffs seek to set aside the MSA pursuant to the doctrine of mutual mistake.  The parties to the MSA entered into that agreement under the same misconception of a material fact, i.e. that releases of the abstracts of judgment that clouded the title of the property in question had been obtained and would be filed by Defendants prior to issuance of the payoff statement.  This mistake of fact materially affected the agreed-upon exchange, as the presence of these judgment liens inhibited Plaintiffs' ability to obtain financing to pay off the DBNTC lien and own the property free and clear as was the intention of the parties.

22. Additionally and or in the alternative, Plaintiffs seek to set aside the MSA pursuant to the doctrine of unilateral mistake.  As set forth above, Plaintiffs understood (based on the representations of Defendants' counsel) that the judgment liens in question had been obtained via a claim on the title policy covering the transaction between Galland and DBNTC's predecessor in interest.  That mistaken understanding related to a material feature of the MSA, in that it determined whether Plaintiffs would be able to obtain financing to pay off the DBNTC lien and whether they would own the property free and clear following payment to DBNTC.  Thus, it would be unconscionable to enforce the MSA in light of such a consequential mistake.  Plaintiffs exercised

ordinary care in believing Defendant Chase's counsel's representations that the judgment liens had been obtained and would be filed, because all parties to the MSA had an interest in removing these judgment liens.  Setting aside the MSA on the basis of this unilateral mistake will not prejudice the Defendants except for the loss of their bargain, and equity requires that the MSA be set aside as the unilateral mistake was made as a primary result of Defendant Chase's counsel's representations made at the mediation.

23.     Additionally and/or in the alternative, the MSA is ambiguous as to whether the payoff amount referred to in the agreement included a release of the prior judgment liens that all parties to the agreement believed had been released and as to whether Plaintiffs waived any rights with respect to the statute of limitations applicable to the deed of trust.

24.     Defendants DBNTC's and Chase's actions were committed intentionally and knowingly, thereby making Defendants DBNTC and Chase liable to Plaintiffs for mental anguish and additional damages pursuant to the Texas Debt Collection Practices Act and the Texas Deceptive Trade Practices Act.  Plaintiffs seek attorney fees pursuant to the Texas Debt Collection Practices Act, the Texas Deceptive Trade Practices Act, the Fair Debt Collection Practices Act, Chapter 38 of the Texas Civil Practice and Remedies Code, and the common law.

25.     As set forth in their separately filed Application for Preliminary Injunction, on file and incorporated herein by reference, Plaintiffs seek a preliminary injunction prohibiting Defendants from evicting Plaintiffs from the property in question or taking any other action inconsistent with the right of Plaintiffs to exercise the quiet use and

enjoyment of the property in question.  After trial on the merits, Plaintiffs seek a permanent injunction rescinding the foreclosure sale in question and prohibiting Defendants from seeking to foreclose on the property in question or from taking any other action inconsistent with the right of Plaintiffs to exercise the quiet use and enjoyment of such property.

## DAMAGES

26.   As a direct result of the above-described acts of Defendants, and/or as a result of their reasonable reliance on the above-described misrepresentations of Defendants, Plaintiffs have suffered damages in the form of loss of equity in the property in question, lost profits, loss of time, severe mental anguish, and attorney fees.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, John Porterfield and Anita Porterfield, Plaintiffs herein, respectfully pray that after trial on the merits, the Court award Plaintiffs actual and additional damages, attorney fees, and costs in an amount within the jurisdictional limits of the Court, and/or additionally or in the alternative, that the Court set aside the settlement agreement in question pursuant to the doctrines of mutual mistake and/or unilateral mistake, that the court grant preliminary and permanent injunctive relief as set forth above and in the separately filed Application for Preliminary Injunction, and for such other and further relief, in law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

Riley & Riley

Attorneys at Law

By: */s/ Charles Riley*
CHARLES RILEY
State Bar No. 24039138
DARBY RILEY
State Bar No. 16924400
320 Lexington Avenue.
San Antonio, Texas 78215
Telephone:  (210) 225-7236
Facsimile:  (210) 227-7907
ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that, on the **27th day of September,** 2012 a true and correct copy of the above and foregoing has been served via CM/ECF electronic transmission on the following:

William Lance Lewis
Rachel Lee Hytken
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100
(214) 871-2111 fax
*Attorneys for Defendant*

*/s/ Charles Riley*
CHARLES RILEY