**FILED**

MAR 1 0 2015

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ *M.H.* _____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOHN PORTERFIELD AND ANITA        )
PORTERFIELD,                      )
                                  )
            Plaintiffs,           )
                                  )
        v.                        )          Civil Action No. 5:12-815-RCL
                                  )
JP MORGAN CHASE, NA AND           )
DEUTSCHE BANK NATIONAL TRUST      )
COMPANY,                          )
                                  )
            Defendants.           )
_____ )

## MEMORANDUM AND ORDER

Defendants' counterclaim for breach of contract is the only matter still pending in this suit. This counterclaim has previously been the subject of a motion for summary judgment. After further review of the record and briefing and after pre-trial conferences held February 13 and 19 and March 4, 2015, the Court concludes that this claim does not present issues triable to a jury on this record. Summary judgment on defendants' counterclaim will be granted for the reasons that follow.

## I. FACTS

The Court has previously set forth the facts of this case in its opinion regarding the parties' motions for summary judgment. The relevant facts are stated below:

> In December 2005, John Galland entered into a loan transaction with Long Beach Mortgage Company which was secured by a mortgage encumbering real property located at 2 Walnut Grove, Boerne, Texas 78006 (the "Subject Property"). Deutsche Bank eventually became successor in interest to Long Beach Mortgage Company, and Chase became the servicer of the loan. In March 2006, Galland entered into a contract with [the Porterfields], who sought to purchase the

Subject Property from him.  When Galland later refused to sell, [the Porterfields] sued Galland in state court for specific performance of the contract.  On April 19, 2007, the state court rendered judgment in favor of [the Porterfields] and awarded [them] ownership of the Subject Property.  Later that year, [the Porterfields] learned that, in addition to the mortgage lien, the Subject Property was also encumbered by two other judgment liens held by Warren Power & Machinery, L.P. and Frost National Bank of San Antonio.

A dispute arose between [the Porterfields] and defendants over the payoff of the lien that defendants held on the Subject Property.  On September 28, 2007, [the Porterfields] filed suit against defendants in the 216th Judicial District Court of Kendall County, Texas (the "Underlying Lawsuit").  In September 2011, the parties reached a Mediated Settlement Agreement ("MSA"), pursuant to which Deutsche Bank agreed to release its lien if [the Porterfields] tendered $120,000 to Deutsche Bank by December 31, 2011.  According to [the Porterfields], the parties discussed the existence of the two prior judgment liens and possessed the mutual understanding that releases of the two prior judgment lines had been obtained by Fidelity National Title Insurance Company pursuant to the title insurance policy covering the Galland loan transaction.  Although Chase was not a party to the MSA because it had been dismissed from the Underlying Lawsuit, Chase's attorney allegedly represented during mediation that Chase would ensure that the title company filed releases of the judgment liens.

[The Porterfields] did not meet the December 31, 2011 deadline for tendering $120,000 to Deutsche Bank.  According to [the Porterfields], they could not obtain financing for the transaction because the title company had not filed releases of the judgment liens. Additionally, defendants never allegedly provided a "usable payoff statement."  In spring 2012, Deutsche Bank's attorney, Darrell Smith, allegedly represented to [John Porterfield] that he was working to remove the judgment liens and that Deutsche Bank would not foreclose on the Subject Property before the filing the judgment lien releases.

On August 7, 2012, defendants conducted a foreclosure sale of the Subject Property.  [The Porterfields] did not receive advance notice of foreclosure sale.

On August 20, 2012, [the Porterfields] filed the instant lawsuit against defendants in the 216th Judicial District Court of Kendall County, Texas, seeking to overturn the foreclosure sale.  Defendants timely removed the case to federal court on August 31, 2012.

*Porterfield v. JP Morgan Chase, N.A.*, No. SA-12-CV-815-DAE, 2014 WL 3587783, at *1–2

(W.D. Tex. July 21, 2014) (internal citations omitted).  All of the Porterfields' claims have now

been dismissed from this lawsuit.[1]  Defendants' counterclaim for breach of the MSA remains pending.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A motion for summary judgment is only defeated by a "genuine" dispute as to a "material" fact; the "mere existence of *some* alleged factual dispute" is not enough.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Material facts are those which could affect the outcome of a case, as determined by the substantive law underlying the suit.  *Id.* at 248.  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

As to issues for which the nonmoving party bears the burden of proof, the "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmovant, in response, must "identify specific evidence in the record" and "articulate the precise manner in which the evidence support[s] their claim."  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (alteration in original) (internal

---

[1] At the March 4, 2015 pretrial conference, the Court orally dismissed the Porterfields' last remaining claim for violation of the Texas Debt Collection Practices Act ("TDCPA").  That claim arose out of an October 21, 2009 letter guaranteeing that defendants would send notice to the Porterfields before undertaking foreclosure proceedings.  Such notice was not provided.  The only portion of the TDCPA which plaintiffs relied upon in their briefing and that could potentially make this letter actionable is Texas Finance Code section 392.304(a)(19), which makes a party liable for "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."  Pursuant to broader principles of Texas misrepresentation law, the Fifth Circuit has held that a promise of future action may only be the basis of a claim under this provision if "the promise was made with no intention of performing at the time it was made." *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) (per curiam) (unpublished op.) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).  The October 21, 2009 letter is a promise of future action, specifically a promise to provide notice before initiating foreclosure proceedings.  Plaintiffs have not submitted any evidence that this promise was made without intent to perform at the time it was made.  Therefore, plaintiffs' TDCPA claim had no valid basis and was dismissed.

citation and quotation marks omitted).  A court must "draw all reasonable inferences [from the evidence] in favor of the nonmoving party" and shall "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal citation and quotation marks omitted).[2]

Under Texas law, "[t]he elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014) (quoting *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012)).  A court may enforce a settlement agreement just as it would any other binding contract. *Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011) (citing Tex. Civ. Prac. & Rem. Code § 154.71(a)).  The construction of a settlement agreement is governed by the same legal principles that apply to contracts in general. *Id.* (internal citation omitted).

## III. DISCUSSION

### A. Breach of Contract Counterclaim

The first three elements of defendants' breach of contract cause of action are quickly disposed of.  Aside from a series of affirmative defenses raised by the Porterfields—which the Court will discuss shortly—the validity of the MSA does not appear to be in dispute.  Regarding element two, the Court previously determined that, as a matter of law, defendants performed

---

[2] Defendants moved for summary judgment on their counterclaim. ECF No. 92.  The Court previously denied that motion as to the counterclaim. *Porterfield*, 2014 WL 3587783, at *24–25.  Nonetheless, the Court may revisit that denial and "reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (internal quotation marks and citation omitted).  After hearing the arguments of counsel at the series of pretrial conferences recently held and upon further consideration of the summary judgment briefing and record and the relevant legal authorities, the Court has concluded that no genuine issue of material fact exists as to defendants' counterclaim and that it must reverse its prior ruling.

their end of the bargain by providing a payoff letter.  *Porterfield*, 2014 WL 3587783, at *7 (dismissing the Porterfields' claim that defendants breached the MSA).  The Court shall not disturb that holding.  Defendants have also proved the third element of their counterclaim, breach by the other party to the contract, as a matter of law.  The Porterfields breached the MSA by filing this lawsuit and failing to vacate the property after foreclosure, steps which run contrary to their obligation under the MSA to "not oppose, contest or in any way delay or thwart the foreclosure" and to "promptly vacate the property."  Mediated Settlement Agreement 5, John Porterfield Decl., Ex. 1, Attach. 5, ECF No. 81-1 (hereinafter "MSA").

The final element, damage to defendants, has also been established as a matter of law. The defendants have been damaged by the Porterfields' failure to vacate the property, as they agreed to do in the MSA.  As a result, defendants have been prevented from taking possession of the property themselves or taking any other action with respect to it.

### B.  Affirmative Defenses

The Porterfields raise a number of affirmative defenses to defendants' counterclaim: fraud, fraudulent inducement, mutual mistake, unilateral mistake, estoppel, and offset.  Pls.' Resp. to Defs.' Mot. For Ruling ¶ 9, ECF No. 121.  The Court has previously ruled that the Porterfields' mutual mistake and estoppel defenses are unavailing.  *See Porterfield,* 2014 WL 3587783, at *7 n.3; Pre-Trial Order 2 n.1, Feb. 18, 2015, ECF No. 144.  As for offset, the Porterfields have failed to plead facts or provide authorities demonstrating their entitlement to any offset.  Furthermore, all of their claims have now been dismissed from this lawsuit so the Porterfields have no claim to an offset on the basis of damages owed to them.

The Porterfields' unilateral mistake defense also fails.  There are two species of unilateral mistake under Texas law.  First, "[u]nilateral mistake by one party, and knowledge of that

mistake by the other party, is equivalent to mutual mistake." *Givens v. Ward*, 272 S.W.3d 63, 67

(Tex. App.—Waco 2008) (quoting *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988)).

Second, the court may grant equitable relief for unilateral mistake when

> (1) the mistake is of so great a consequence that to enforce the contract as made
> would be unconscionable; (2) the mistake relates to a material feature of the
> contract; (3) the mistake must have been made regardless of the exercise of
> ordinary care; and (4) the parties can be placed in status quo in the equity sense,
> *i.e.*, rescission must not result in prejudice to the other party except for the loss of
> his bargain.

*James T. Taylor & Son, Inc. v. Arlington Indep. School Dist.*, 335 S.W.2d 371, 372–73 (Tex.

1960).  As to the first element, the "basic test for unconscionability is whether, given the parties'

general commercial background and the commercial needs of the particular trade or case, the

clause involved is so one-sided that it is unconscionable under the circumstances existing when

the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

Whether a contract is unconscionable is a question of law to be decided by the court.  *Hoover*

*Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006).

In support of this defense, the Porterfields have offered John Porterfield's declaration

about statements and conduct at the mediation where the MSA was negotiated and executed.

John Porterfield Decl. ¶¶ 12–13, ECF No. 81-1.  Texas law renders such evidence inadmissible

against a participant to the mediation.  Tex. Civ. Prac. & Rem. Code § 154.073(a) ("a

communication relating to the subject matter of any civil or criminal dispute made by a

participant in an alternative dispute resolution procedure . . . may not be used as evidence against

the participant in any judicial or administrative proceeding").  This statute forbids the

introduction of statements made in mediation as support for an affirmative defense to

enforcement of a settlement agreement.  *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401

S.W.3d 783, 798–99 (Tex. App.—Dallas 2013) (holding that statements made during mediation may not be introduced to support affirmative defenses of mutual mistake and fraud).

The Porterfields also point to statements allegedly made by defendant JP Morgan Chase's attorney J.K. Leonard in October 2009. John Porterfield declares that Leonard was told about the judgment liens and "acknowledged the value of [Porterfield's] efforts to confirm the release of the liens and his understanding that all parties had a mutual interest in having those liens removed." John Porterfield Supplemental Decl. ¶ 4, ECF No. 99-1. Porterfield further declares that Leonard "said that he would investigate the judgment liens" and would inform the Porterfields "if releases of the judgment liens had not been obtained as we understood." *Id.* Leonard allegedly never told the Porterfields anything further regarding the liens. *Id.* These statements go to the first species of unilateral mistake described above—mistake by one party and knowledge of that mistake by the other. They do not, however, demonstrate that defendants were aware of the Porterfields' alleged mistake regarding the meaning of the MSA. The statements are far too remote in time and circumstance from execution of the MSA to demonstrate that (1) the Porterfields misunderstood the scope of the MSA or (2) defendants knew the Porterfields were so mistaken.

The second type of unilateral mistake is not presented by these facts either because enforcement of the MSA would not be unconscionable. Even if the judgment liens were attached to the Subject Property—a matter of dispute among the parties—this would not render the contract so grossly one-sided as to bear the heavy burden of proving unconscionability. *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005) (stating that the "grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede").

Finally, the Porterfields have failed to raise a genuine issue of material fact as to fraud and fraudulent inducement. The evidence regarding statements and conduct at the mediation is inadmissible for the reasons stated above. Leonard's statement that he would inform the Porterfields if judgment liens had not been obtained also does not form a proper basis for these defenses because it is a promise of future conduct. The Porterfields have presented no evidence indicating that Leonard's promise was made with the present intent not to perform, as is required for a misrepresentation claim based on a promise. *Formosa Plastics*, 960 S.W.2d at 48.

The Porterfields contend that defendants have waived confidentiality as to their mediation statements and conduct by including a somewhat restricted confidentiality provision in the MSA that states "[t]he parties agree to keep the terms and provisions of this settlement confidential unless required to disclose by law." MSA 3. The confidentiality right is separate, however, from the right not to have statements made during mediation used as evidence against a party in a judicial proceeding. *See In re T.T.*, 39 S.W.3d 355, 360 (Tex. App.—Houston [1st Dist.] 2001) (holding that although a party may have waived the confidentiality of a mediator's report, the party did not waive the right not to have that report used as evidence against them). Waiver of the latter right does not necessarily follow from waiver of the former. *Id.* The confidentiality provision of the MSA says nothing about the evidentiary admissibility of conduct or statements made at mediation. The Court concludes that defendants, even if they waived confidentiality as to statements and conduct at the mediation, did not waive their entitlement to preclude such matters from being used as evidence against them in this Court.

## C. Remedies

Having concluded that summary judgment is proper as to defendants' counterclaim for breach of the MSA, the Court must now determine the remedies to which defendants are entitled.

The situation between these parties is analogous to cases where a holdover tenant wrongfully continues to possess property owned by a landlord. In such cases, Texas courts award damages against the wrongful possessor of property according to the property's reasonable rental value. *Wood v. Kennedy*, ---S.W.3d---, 2014 WL 6677945, at *4 (Tex. App.—Houston [14th Dist.] Nov. 25, 2014) (citing *Alford v. Johnston*, 224 S.W.3d 291, 297 (Tex. App.—El Paso 2005)). This damage measure is in keeping with the common law rule that trespassers wrongfully possessing real property may be liable to the rightful owner for the property's reasonable rental value. *See* 28A C.J.S. *Ejectment* § 239 (2015) (stating that compensation by providing fair or reasonable rental value equates to the "value of the use and occupation of the realty while adversely or wrongfully held").

Defendants have presented sufficient evidence of reasonable rental value of the property during the period after foreclosure in the form of a lease agreement entered between the Porterfields and a third party shortly before foreclosure. Texas courts hold that evidence of reasonable rental value may come from the terms of a lease agreement regarding the property. *Wood*, 2014 WL 6677945, at *8 (citing *Volume Millwork, Inc. v. W. Houston Airport Corp.*, 218 S.W.3d 722, 730–31 (Tex. App.—Houston [1st Dist.] 2006)). The lease agreement before the Court obligates the tenant to pay a monthly rent of $1,750 for the Subject Property from May 15, 2012 to November 15, 2012, automatically renewable at six month intervals thereafter until terminated in writing. Residential Lease Agreement ¶¶ 1–2, ECF No. 92-5.[3]

In response, the Porterfields have argued that (1) defendants have not proved that they would have rented the property themselves or obtained a similar rent level and (2) defendants

---

[3] Defendants contend that the Porterfields have continued to rent the property, an assertion that the Porterfields have not controverted. Nonetheless, a lease agreement is probative evidence of reasonable rental value even if the period being considered goes beyond that lease term. *Wood*, 2014 WL 6677945, at *8 (concluding that a lease no longer in effect provided sufficient evidence of reasonable rental value during a ten month holdover period).

have not taken account of expenses that they would have incurred in renting the property (thus requiring a corresponding reduction in the amount of defendants' damages). Porterfield Supplemental Decl. ¶ 13. These arguments do not constitute evidence for any different level of reasonable rental value. Also, regarding point two, the Porterfields have not presented evidence regarding the amount of these alleged expenses, aside from John Porterfield's estimation unsupported by documentation, or legal authorities supporting an entitlement to the sort of offset implicitly argued for.

In light of the foregoing, the Court concludes that defendants are entitled to damages in the form of the reasonable rental value of the Subject Property from the date of foreclosure to this date. Based on the reasonable rental value of $1,750 per month, a foreclosure date of August 7, 2012, and this date of judgment, the Porterfields will be liable to defendants for $54,362.90.[4]

Defendants have also asked the Court for the remedy of specific performance of the MSA. "Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract." *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008). It may be awarded when damages would be inadequate to compensate a party for breach of contract. *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999). It is "generally believed" that damages are inadequate "in connection with real property." *Id.* at 370. Therefore, the Court concludes that the defendants are entitled to an order from this Court enforcing the provision of the MSA stating that the Porterfields will vacate the Subject Property upon foreclosure.

## III. ORDER AND JUDGMENT

For the foregoing reasons, it is hereby

---

[4] There is a dispute over the defendants' entitlement to attorney's fees and costs. This dispute should be resolved after judgment by a motion filed pursuant to Federal Rule of Civil Procedure 54 and Local Rules CV-7(j) and CV-54.

**ORDERED** that, as stated at the pretrial conference on March 4, 2015, plaintiffs' claim for violation of the Texas Debt Collection Practices Act is DISMISSED; and it is further

**ORDERED** that summary judgment is GRANTED as to defendants' counterclaim; and it is further

**ORDERED** that, as stated at the pretrial conference on March 4, 2015, plaintiffs' motions for reconsideration [ECF Nos. 148, 154] are DENIED; and it is further

**ORDERED** that judgment be entered in favor of defendants; and it is further

**ORDERED** that plaintiffs shall pay to defendants $54,362.90 as damages; and it is further

**ORDERED** that, pursuant to the Mediated Settlement Agreement, plaintiffs must vacate the Subject Property, 2 Walnut Grove, Boerne, Texas 78006, within 30 days of this date; and it is further

**ORDERED** that defendants shall file a motion and proposed bill regarding their claim for attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 54 and Local Rules CV-7(j) and CV-54, within 14 days of this date; and it is further

**ORDERED** that the jury selection and trial currently scheduled is canceled in light of this disposition; and it is further

**ORDERED** that all other pending pretrial motions [ECF Nos. 128, 135, 142, 150] are DENIED as moot.

It is **SO ORDERED** this 10th day of March 2015.

ROYCE C. LAMBERTH
United States District Judge

11